IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 16-cv-702-GPG

DAWN FARRIS,

    Plaintiff,

v.

OHIO SECURITY INSURANCE COMPANY,

    Defendant.

---

# RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter comes before the Court on the following motion: Defendant's motion for summary judgment (ECF #33)[1], Plaintiff's response (ECF #34) and Defendant's reply (ECF #39). This motion has been referred to this Magistrate Judge for recommendation. (ECF #42).[2] The Court has reviewed the pending motion, response, reply and all attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the

---

[1] "(ECF #33)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

premises. A Recommendation as to Plaintiff's motion for certification of question of law to the Colorado Supreme Court pursuant to C.A.R. 21.1 (ECF #35), also referred to me and which is to some extent intertwined with this motion, will be filed separately. Oral argument is not necessary for resolution of these matters. I respectfully recommend that Defendant's motion for summary judgment be GRANTED.

Background

On September 5, 2014, Ernie Farris died in a single vehicle accident while riding on the back of an all-terrain vehicle ("ATV") which was being driven by Jason Baca on a public roadway in Mesa County, Colorado. After exhausting other insurance sources, *see infra*, Plaintiff, the widow of Mr. Farris, sought coverage for uninsured motorist/under insured motorist, UM/UIM (hereinafter "UIM" for simplicities' sake) benefits from Defendant. After being rebuffed, Plaintiff filed suit asserting two claims, declaratory judgment and breach of contract, under the theory that a business auto policy issued to EF, Inc. should have afforded UIM coverage in this instance. The accident was not business related to EF, Inc., the ATV was not insured under the policy and Jason Baca had no connection to the business. Defendant did not pay UIM coverage.

Plaintiff filed suit in Mesa County District Court on February 24, 2016 and the action was later removed to this Court. The parties are diverse and the amount in question is in excess of $75,000.00 thus giving rise to Federal jurisdiction. The substantive law of the State of Colorado governs this dispute.

Plaintiff's first claim is that declaratory judgment to reform the policy is necessary under the theory that the policy must provide UIM benefits to "at least one class of persons without

regard to vehicle occupancy." (ECF #7, p. 14, para. 101). Plaintiff believes that the policy is in contravention of Colorado law for such failure and that reform is the appropriate remedy. Plaintiff's second claim for relief is for breach of contract for failing to afford UIM coverage.

Defendant seeks summary judgment claiming that the decedent was not afforded coverage as an insured under the policy. Additionally, Defendant posits that the ATV was not a motor vehicle under Colorado law thus not qualifying as an uninsured motor vehicle.

Standard of Review

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each essential element essential to the case.´ *Bausman v. Interstate Brands Corp*., 252 F.3d 1111, 1115 (10th Cir. 2001) (citation omitted). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

The Ohio Security Policy

The Court has been provided with policy number BAS (15) 55 73 09 37 with coverage provided by Defendant Ohio Security Insurance Company and which was issued on 3/21/2014. (ECF #33-2, p. 10). The named insured is EF INC, the named insured is listed as corporation and the insured business is listed as flow tester. *Id*.

The listed coverages are as follows:

Liability Insurance, covered auto symbols 7, 8, and 9;

Medical payments, covered auto symbol 7;

Uninsured motorist, covered auto symbol 7.

*Id*. at p. 12.

The covered vehicle is one 2003 Chevrolet 1500.

*Id.* at p. 13.

> As a business auto policy, "you" and "your" are defined as "the named insured shown in the declarations."

*Id*. at p. 16.

Symbol 7 states:

> Specifically described "autos." Only those "autos" described in item three of declarations for which a premium charge is shown (and for liability coverage any "trailers" you don't own while attached to any power unit described in Item Three).

*Id*.

Symbol 8 states:

> Hired "autos" only. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

*Id*.

Symbol 9 states:

> Non-owned "autos" only. "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your

5

    "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

*Id.* at p. 17.

For liability insurance purposes, insureds include:

a.  You for any covered "auto."

b.  Anyone else while using with you permission a covered "auto" you own, hire or borrow.

*Id.*

For Colorado purposes with regard to UIM and a corporation, insureds are:

a.  Anyone "occupying" a covered auto . . .

b.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

*Id.* at p. 33.

  There is no dispute that the vehicle in question was not the listed covered auto (2003 Chevrolet) and that the accident did not occur while someone was engaged, in any fashion, in work for EF Inc. The accident was entirely recreational in character. Also, the covered auto was not implicated in such a fashion that there would be any valid argument that someone was occupying that auto.

  Defendant's argument with regard to summary judgment is fairly straightforward and direct. Essentially, Defendant asserts that: (1) the auto in question[3] was not the covered auto; (2) EF Inc. is the covered corporation and not Ernest Farris individually; (3) this was an accident which occurred during a recreational activity completely divorced from the business activities of

---

[3] The Court will assume the ATV is an auto for the majority of this Recommendation unless otherwise specifically noted.

EF Inc. which includes the fact that the driver, Jason Baca, had nothing to do with EF Inc.; and (4) an ATV is not an uninsured motor vehicle under Colorado law. For all of those reasons, Defendant asserts coverage was not afforded.

Plaintiff posits that the summary judgment motion should be denied on the following basis: (1) the policy conditions all UIM coverage on specific vehicle occupancy in contravention of Colorado law which requires UIM coverage to be extended to persons. This failing requires the policy to reformed to comply with Colorado law; and (2) the ATV is a vehicle and was being used on a public roadway, thus coverage should be afforded.

Analysis

The plain language of the policy:

"Analysis of an insurance contract begins with the intent of the parties as expressed in the plain language of the policy. The terms are to be construed as they would be understood by a person of ordinary intelligence." *General Ins. Co. of America v. Smith*, 874 P.2d 412, 413 (Colo. App. 1992) (citation removed). When construing the terms of a contract, the Court's ultimate objective is to give effect to the parties' mutual intentions. *East Ridge of Fort Collins, LLC v. Larimer & Weld Irrig. Co.,* 109 P.3d 969, 973 (Colo. 2005). Absent some showing that the parties intended otherwise, the Court indulges in the assumption that the plain and ordinary meanings of the words used in the contract reflect the parties' agreement. *Id.* The intent should be garnered from the policy language alone whenever possible. *Compton v. State Farm Mut. Auto Ins. Co.,* 870 P.2d 545, 547 (Colo. App. 1993).

The plain language of the terms of the insurance contract are not only clear but also to clearly exclude coverage in this circumstance. Plaintiff admits as much in her complaint (ECF

#7, pp. 7-10) (never stating that the policy language directly provides coverage but instead propounding the theory that the Ohio Security policy does not comply with UIM statute for failing to provide UIM coverage to one class of persons without regard to vehicle occupancy and advocating that Ernie Farris, as the sole owner, director, officer and employee of EF, Inc. be the person covered for such benefits). Plaintiff's response to the motion for summary judgment continues to promote those theories and refrains from making any argument that the plain language of the policy would afford such coverage without the sought reformation/interpretation. However, it is in ignoring the plain language of the policy that Plaintiff makes the flaw which I believe is ultimately dispositive in this case and warrants granting the motion for summary judgment.

Starting with who is insured, the policy tells us, it is "you" and "your" in this case EF, Inc., a flow testing business. So the person(s) covered is/are those working for the business. At times Ernie Farris might be in this class (if he was working) at times others might fall into this class (if they were hired or otherwise working for EF, Inc.) There is a class of one or more persons that would be entitled to UIM coverage that is not vehicle dependent.[4] These are people, not vehicles, that would be covered if their actions, working for EF, Inc., warranted such coverage. This would be true for symbols 7, 8 and 9 as set forth above, all of which would be afforded liability coverage (and presumably UIM coverage under the *McMichael* doctrine, *see infra*). While these people are not specifically named, e.g., John Doe, they do not have to be as the policy provides coverage to EF, Inc. and the symbols 7, 8, and 9 include them.

---

[4] There may be an undecided issue about coverage for the 2003 vehicle if it was being used for non-work related purposes. But, since the listed vehicle was not at all involved in the accident, I refrain from addressing such an issue.

The policy provides coverage in at least two different ways, neither of which includes the accident which occurred here. The first is coverage related to the listed vehicle, the 2003 Chevrolet. But that vehicle was not involved in this case and no one claims that it was. So any coverage stemming from this vehicle would be irrelevant to this action. The second stream of coverage comes from work related activities for EF, Inc. As to this stream of coverage, it all starts, and ends, with the question of whether the accident which killed Ernie Farris was work related. It was not. Therefore, a review of symbols 7, 8 and 9 shows that there was no coverage under the plain language of the policy. For purposes of this motion I am assuming *arguendo* that any UM/UIM coverage should be concomitant with the liability coverage, essentially meaning that if there was liability coverage for symbols 7, 8 and 9 that there should be UM/UIM coverage for the same. There was no liability coverage and thus no UIM coverage.

Considering Ernie Farris the insured:

Plaintiff cites *Hawkeye-Security Ins. Co. v. Lambrect & Sons, Inc.*, 852 P.2d 1317, 1319 (Colo. App. 1993) for the proposition that Ernie Farris should be considered the insured, not the corporation. In *Hawkeye,* the injured party, Paulette Lambrecht, believed she was afforded UIM coverage. Mrs. Lambrecht and her husband were both employed by the corporation, she was an officer and director thereof and her husband was a listed driver. The policy included within the ambit of UIM coverage "any family member." *Id*. at 1318. In particular, Plaintiff points out that "[a] corporation can itself never sustain "bodily injury."" ECF #7, p.11, para. 76 (citing *Hawkeye supra* at 1319). The *Hawkeye* Court determined that Mrs. Lambrecht should receive UIM coverage and remanded the case for further proceedings.

This action is more in line with *Farmers Ins. Exchange v. Anderson*, 260 P.3d 68, 78-79 (Colo. App. 2010) (summarizing the *McMichael* doctrine, addressing who is covered in the circumstance of a policy issued to a corporation and determining that "[o]ne [person] must be an *insured* for coverage to apply "irrespective of the vehicle."") (emphasis original). Like in this action, the policy in *Anderson* had a provision which defined "you" as the corporation and covered persons using a delineated covered auto or an auto that was borrowed or hired.

Plaintiff's argues that "EF, Inc., although it is the named insured, cannot be the person(s) insured for UM/UIM benefits because a corporation cannot suffer bodily injury and thus cannot recover UM/UIM benefits." *Supra* at ECF # 7. This argument ignores the fact that there can be an insured, whomever is using the covered auto (symbol 7), or whomever is using a hired auto for work purposes (symbol 8) or a borrowed auto for work purposes (symbol 9). That covered person would be afforded UIM coverage in addition to liability coverage, thus obviating any need to reform the policy in this action under the theory that there is no person. There is a person, just not necessarily Ernie Farris.

Mr. Farris could, and did, choose to purchase policies which afforded him UIM insurance in this instance: a Progressive policy which paid $25,000.00 in UIM coverage, a Travelers policy which paid $100,000.00 in UIM coverage and a Sentry Insurance policy which paid $25,000.00 in coverage (Mr. Baca also had a Progressive policy which paid another $25,000.00 in UIM coverage). ECF # 7, p. 8. In this instance, a policy was purchased for EF, Inc. which followed the vehicle (2003 Chevrolet 1500) and the business activities of a flow testing business. Common sense dictates that it was the risk and activities related to that vehicle and those potential business activities for which some actuary quoted a policy. It would be fundamentally unfair to the theory of contacts and negotiations to gerrymander such a policy into covering

entirely unrelated activities engaged in by Mr. Farris and call them covered by saying that Mr. Farris individually must be covered.  The reasoning for this is well summed up in *Farmers*: "[o]therwise, insurance coverage purchased by one individual could conceivably cover a variety of unrelated persons under a variety of unanticipated circumstances without payment of a corresponding premium."  *Farmers supra* at 79.

*DeHerrera* and *McMichael*:

Defendant and Plaintiff engage in extensive analysis of  the line of cases which includes *Aetna Cas. & Sur, Co. v. McMichael*,  906 P.2d 92 (Colo. 1995) (holding that Colorado law requires "[t]hat insurers must offer UM/UIM coverage to a class of insureds coextensive with the class of insured covered under the liability provision of the policy") and *DeHerrera v. Sentry Ins. Co.*,  30 P.3d 167 (Colo. 2001).  *See also Farmers supra* at 79.

As set forth above, Plaintiff argues that *McMichael* should be applied to reform the policy in this case to afford UIM coverage to a class of insureds coextensive with the class of insured covered under the liability provision of the policy.  I recommend refusal to do so for the same reasons as those set forth by Senior Judge Matsch in *Carolina Casualty Insurance Company v. Mountain States Hotshot, LLC*, 2016 WL 398162 *3, (D. Colo. 2016) (Action seeking a declaration that Brach, an employee of Mountain States who was the not at fault party in an auto accident while operating his motorcycle and who not and insured under the policies liability provisions, had no basis to reform of the policy to cover him under the UM/UIM provisions).  In that case Senior Judge Matsch even assumed that the accident was work related, a proposition not forwarded in this case.  The parties here all agree that the accident was completely unrelated to the business of EF, Inc.  I see no reason to deviate from Senior Judge

Matsch's findings in an action remarkably similar to this one and due to the persuasive nature of Judge Matsch's findings.  For the same reason, I also see no need to determine whether his ruling would be binding on this Magistrate Judge's issuance of a recommendation to another Article III Judge of the same Court as I find his reasoning relevant, sound and persuasive.[5]

Because the policy does not afford even liability coverage to Ernie Farris, there is no basis to reform the policy as to UM/UIM coverage under *McMichael*.

Because I recommend that the District Court find that the policy does not provide UIM coverage for Ernie Farris, the breach of contract must fail as a matter of law.  There could have been no breach of contract for failure to pay when there was no such coverage under the policy.

As I recommend that there was no UIM coverage, I do not reach the issue of whether the ATV might have been a covered vehicle if it was being used for work purposes and fell within Symbols 8 or 9.  It was not a specifically delineated vehicle, was not a hired auto or a borrowed auto so I need make no further findings in that area.

For the aforementioned reasons, I respectfully recommend that Defendant's motion for summary judgment be GRANTED.

Dated at Grand Junction, Colorado, this December 19, 2016.

 

Gordon P. Gallagher
United States Magistrate Judge

---

[5] While perhaps irrelevant, the Court finds it interesting that Counsel for the current Plaintiff include many of the same Counsel that represented Defendant Mountain States in the *Carolina Casualty* case.